J-S60002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: Z.J.H., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.R.T., MOTHER | No. 925 EDA 2015 |

Appeal from the Decree March 16, 2015
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): CP-51-AP-0000323-2014

BEFORE: BENDER, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED DECEMBER 22, 2015**

Appellant, L.R.T., ("Mother") appeals from the decree entered March 16, 2015 in the Court of Common Pleas of Philadelphia County, involuntarily terminating the parental rights of Mother to Z.J.H. ("Child") (born February of 2013) and changing Child's permanency goal to adoption under Section 6351 of the Juvenile Act, 42 Pa.C.S.A. § 6351.[1]  We affirm.

In February of 2013, Child came into the care of the Philadelphia Department of Human Services ("DHS") after DHS received a General Protective Services report stating both Mother and Child tested positive for cocaine at the time of Child's birth.  On February 13, 2013, DHS obtained an Order of Protective Custody.  On April 8, 2013, the trial court adjudicated Child dependent.  At that hearing, Mother was ordered to go to the Clinical Evaluation Unit ("CEU") for a drug screen and dual diagnosis assessment

---

[1] On March 16, 2015, J.H.'s ("Father") parental rights to Child were terminated.  Father is not a party to this appeal nor did he file a separate appeal.  Mother has six other children who are not in her care.

and complete a Family Service Plan ("FSP"). Mother's FSP goals were (1) to complete drug and alcohol treatment; (2) to attend family school; (3) to attend visits with Child; and (4) to complete mental health treatment.

On June 28, 2013, a permanency review hearing was held, and Mother was found to be minimally compliant with the objectives set out in the FSP and was again referred to the CEU. At a permanency review hearing held on September 9, 2013, Mother was found to be in substantial compliance with her FSP goals and was ordered to go back to the CEU. On December 9, 2013, a permanency review hearing was held, at which time Mother was incarcerated and referred to the CEU. On February 24, 2014, a report was made to the court that Mother had been discharged from family school for non-compliance. At permanency review hearings held on March 19, 2014 and April 21, 2014, Mother was ordered to go to the CEU.

On July 2, 2014, DHS filed a petition to involuntarily terminate Mother's parental rights and to change Child's permanency goal to adoption. On July 7, 2014, at a permanency review hearing, Mother was found to be minimally compliant with the FSP and was ordered to go to the CEU. On December 12, 2014 and March 16, 2015, the trial court held hearings on the termination petition. At these hearings, Eileen Haskins, a DHS social worker; Manque Flemene, an agency worker for Delta Community Support; and Mother testified. On March 16, 2015, the trial court entered a decree

involuntarily terminating Mother's parental rights to Child and changing Child's goal to adoption.

On March 30, 2015, Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Mother raises the following issues.

1. Did the [t]rial [c]ourt err in terminating [Mother's] parental rights under Pa.C.S. Section 2511?

2. Did the [t]rial [c]ourt err in finding that the termination of parental rights best served [C]hild's developmental, physical and emotional needs under Section 2511(b)?

3. Did the [t]rial [c]ourt err in changing [C]hild's goal to adoption?

Mother's Brief at vi.

Our standard of review regarding orders terminating parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid.

*Id.* at 806. We have previously stated: The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003). Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004).

In terminating Mother's parental rights, the trial court relied upon Sections 2511(a)(1), (2), and (b) of the Adoption Act which provide as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose

- 4 -

of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

We have explained this Court's review of a challenge to the sufficiency of the evidence to support the involuntary termination of a parent's rights pursuant to Section 2511(a)(1) as follows:

To satisfy the requirements of Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing

- 5 -

parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to [s]ection 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

Regarding the definition of "parental duties," this Court has stated:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and

- 6 -

must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

With respect to Section 2511(a)(2), the grounds for termination of parental rights, due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa.Super. 2002). Nevertheless, parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *Id.* at 340.

The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975). There the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

Parental duty requires that the parent act affirmatively with a good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. *In re E.M.*, 908 A.2d 297, 306 (Pa. Super. 2006). A trial court can find an incapacity to parent by finding affirmative misconduct, acts of refusal to parent as well as an incapacity to parent. *In re S.C.B.*, 990 A.2d 762, 771 (Pa. Super. 2010).

On appeal, Mother argues that the trial court erred in terminating her parental rights to Child. Mother's Brief at ix. Mother argues that she was compliant with her FSP objectives, including attending drug and mental health treatment, and she was visiting Child. *Id.*

The trial court found that, during six months prior to the filing of the termination petition, Mother demonstrated a settled purpose of relinquishing her parental claim to Child or failed to perform parental duties. Trial Court Opinion, 5/21/15, at 10. Moreover, the trial court found that, during the two years Child remained in DHS's care, "Mother has not come close to meeting her FSP objectives." *Id.* The trial court found that DHS still had drug and alcohol concerns at the time of the termination hearing. Moreover, the trial court found, "Mother failed to provide any documentation to DHS indicating that she was in compliance with the FSP objectives in order for her to be reunited with Child." *Id.*

At the hearing, Ms. Haskins testified that Mother failed to visit consistently with Child. N.T., 12/12/15, at 23. Ms. Flemene testified that Mother missed nineteen of fifty-eight scheduled visits with Child since January 21, 2014. N.T., 3/16/15, at 5. Ms. Haskins testified that Mother did not complete her FSP goal to attend family school. N.T., 12/12/15, at 22. Ms. Haskins testified that Mother's attendance had become sporadic. *Id.* at 22. Ms. Haskins further testified that Mother was discharged from family school because she "became a little obstinate and noncompliant in terms of following the directives of staff." *Id.* Ms. Haskins testified that Mother did not complete the drug and alcohol program, and the mental health treatment. N.T., 12/12/15, at 18-19, 23. While Mother has participated in drug and alcohol counseling, her participation was sporadic. N.T., 12/12/15, at 18-19. Ms. Haskins testified that she was still concerned about Mother's use of drugs and alcohol and Mother's mental health. *Id.* at 20, 21-22.

Mother's argument regarding Section 2511(a)(1) essentially seeks for this Court to make credibility and weight determinations different from those of the trial court. We stated in *In re Z.P.*, 994 A.2d 1108, 1125 (Pa. Super. 2008), a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a

permanent, healthy, safe environment." ***In re B., N.M.***, 856 A.2d at 856. Consequently, Mother's issue on appeal lacks merit, and we find no abuse of discretion in the trial court's evaluation of Section 2511(a)(1).

Mother argues that DHS failed to present clear and convincing evidence that the causes of the incapacity, abuse, neglect or refusal will not be remedied. Mother's Brief at 4. With respect to Section 2511(a)(2), we find the following portion of the trial court's opinion relevant to our inquiry.

> The [t]rial [c]ourt found that Mother evidenced both an incapacity and refusal to parent. Mother's failure to comply with her FSP objectives when [C]hild was in foster care demonstrated her incapacity and refusal to parent. [The trial c]ourt was not persuaded that Mother could resolve her dependency issues in the near future. In order to be reunified with [C]hild, Mother had to be in compliance with orders from the [trial c]ourt intended to address issues related to drug and alcohol treatment, mental health treatment, Family School and visitation. Over the entire time [C]hild was committed to DHS, Mother did not comply with these FSP objectives. Additionally, there was no evidence, during the approximately two years that Child was in placement[,] that Mother developed the capacity to care for [C]hild's special needs.

Trial Court Opinion, 5/21/15, at 12.

At the termination hearing, Ms. Haskins testified that Child requires twenty-four hour supervision because Child has cerebral palsy and has special needs. N.T., 12/12/15, at 26. Ms. Haskins testified that when Mother accompanied Child to a medical treatment, Mother had very little interaction with the doctor and only asked the doctor one or two questions. ***Id.*** at 10-11. Ms. Haskins testified that, despite receiving special training, Mother was unsuccessful in feeding Child because Mother was unable to

operate the feeding machine. *Id.* at 11-12. Moreover, Ms. Haskins testified that Mother could not properly feed Child after two years. *Id.* at 12-13.

Furthermore, the trial court found:

[C]hild can't wait for Mother to remedy these issues. She's been given more than enough time, more than enough resources, more than enough effort on behalf of [DHS] to engage her in the task of learning how to parent [C]hild. She made some effort but far short of what would be necessary to allow [C]hild to be reunited with her and trust [C]hild's care which will be for the rest of her life.

N.T., 3/16/15, 24-25. We again rely on this Court's statements of the law contained in *In re Z.P.* and in *In re B., N.M.*, which we have quoted *supra*, in regard to our discussion of Section 2511(a)(1). Accordingly, we conclude that the trial court's determinations regarding Section 2511(a)(2) are supported by sufficient, competent evidence in the record.

Mother argues that the DHS worker testified that Child is two years old and has a bond with Mother. Mother's Brief, at 6. The trial court must also consider how terminating Mother's parental rights would affect the needs and welfare of Child pursuant to 23 Pa.C.S.A. § 2511(b). Pursuant to Section 2511(b), the trial court's inquiry is specifically directed to a consideration of whether termination of parental rights would best serve the developmental, physical and emotional needs of the child. *See In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005), *appeal denied*, 587 Pa. 705, 897 A.2d 1183 (2006). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the

child." *Id.* at 1287 (citation omitted). We have instructed that the court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *See id*.

The trial court found:

[C]hild was two years old at the time of the hearing, and had been living in a pre-adoptive home with foster parents who were meeting all of her needs. Ms. Haskins testified that she had observed the Child in the home every month for 7-8 months prior to the December 2014 hearing. Ms. Haskins testified that [C]hild was bonded with her foster parents who were meeting all of her needs.

Since [C]hild spent approximately two years in foster care, Mother has demonstrated no interest in taking steps which would allow her to care for [C]hild, and the fact that [C]hild is in a nurturing and loving foster home, the developmental, physical and emotional needs and welfare of [C]hild is best served by terminating Mother's parental rights.

Trial Court Opinion, 5/21/15 at 14.

Ms. Haskins testified that Child would not be harmed if Mother's parental rights were terminated. N.T., 3/16/15, at 13. Ms. Haskins testified that Child does not know Mother. N.T., 12/12/14, at 29. Ms. Haskins testified that Mother does not know Child and "all the very special needs that [Child] requires and actually how to care for her on a daily basis." *Id.* Ms. Flemene testified that removing Child from Mother's care would not have an impact on Child. N.T., 3/16/15, at 8.

Ms. Haskins testified that she has seen major progress in Child in the pre-adoptive home. N.T. 12/12/15 at 27. Ms. Haskins testified that Child looks for both foster mother and foster father when Child hears either foster parent speak. *Id.* Ms. Haskins testified that foster mother is very attentive to Child and is very knowledgeable about Child's special needs. Ms. Haskins further testified that the foster mother provides twenty-four hour daily supervision for Child. *Id.* at 26.

In the instant case, on the issue of bonding, our review of the record reveals no evidence of a bond between Mother and Child. The trial court found, "the only parental bond that exists is between Child and the foster care parent, that's uncontested." N.T., 3/16/15, at 24. Furthermore, the trial court found "Child can't wait for Mother to remedy these issues." *Id.* We have stated, "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008).

After this Court's careful review of the record, we conclude that the competent evidence in the record supports the trial court's determination that terminating Mother's parental rights pursuant to Section 2511(b) serves Child's best interest. *See In re M.G.*, 855 A.2d at 73-74.

Next, Mother argues that the trial court erred in changing the permanency goal for Child to adoption. This Court has stated:

> When reviewing an order regarding the change of a placement goal of a dependent child pursuant to the Juvenile Act, 42 Pa.

- 13 -

C.S.A. § 6301, *et seq.*, our standard of review is abuse of discretion. When reviewing such a decision, we are bound by the facts as found by the trial court unless they are not supported in the record.

*In re B.S.*, 861 A.2d 974, 976 (Pa. Super. 2004) (citation omitted).

Further,

In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record. We are bound by the trial court's findings of fact that have support in the record. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm even if the record could also support an opposite result.

*In re A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007).

Section 6351(f) of the Juvenile Act sets forth the following pertinent inquiries for the reviewing court:

**(f) Matters to be determined at permanency hearing.—**

At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

. . .

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

   (i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

   (ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

   (iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

42 Pa.C.S.A. § 6351(f)(1)-(6), (9).

Additionally,

[t]he trial court must focus on the child and determine the goal with reference to the child's best interests, not those of the parents. "Safety, permanency, and well-being of the child must

take precedence over **all** other considerations." Further, at the review hearing for a dependent child who has been removed from the parental home, the court must consider the statutorily mandated factors. "These statutory mandates clearly place the trial court's focus on the best interests of the child."

*In re S.B.*, 943 A.2d 973, 978 (Pa. Super. 2008) (emphasis in original) (citations and quotations omitted).

Here, the record reflects that the trial court appropriately considered Child's best interests in deciding whether to change the permanency goal to adoption. The competent evidence in the record supports the trial court's determinations that Child has been in foster care for two years, and that Mother has demonstrated no interest in taking steps which would allow her to care for Child. Trial Court Opinion, 5/21/15, at 14. Moreover, the competent evidence supports the trial court's determination that Child is in a nurturing and loving foster home. *Id.* Moreover, competent evidence in the record supports the trial court's determination that Child's developmental, physical and emotional needs and welfare are being met in her foster home. *Id.* Thus, we will not disturb these determinations. *See In re M.G.*, 855 A.2d at 73-74.

After a careful review, we affirm the decree terminating Mother's parental rights on the basis of Section 2511(a)(1), (2), and (b) of the Adoption Act, and changing Child's permanency goal to adoption under Section 6351 of the Juvenile Act.

Decree affirmed.

- 16 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/22/2015</u>